UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

WILLIAM PRINCE, Individually and for
Others Similarly Situated,

v.

Case No. 19-CV-2653-KHV-JPO

KANSAS CITY TREE CARE, LLC

## DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATE AND THE PROPOSED FORM OF NOTICE TO PUTATIVE CLASS MEMBERS

**COMES NOW** the Defendant, Kansas City Tree Care, LLC., by its Attorney, John Ivan, and responds to Plaintiff's Motion for Conditional Certification and approval of Proposed Notice and Consent Forms. The Defendant provides the following response:

**A.     NATURE OF CASE:**

This case involves William Prince, who worked for K.C Tree from January 3, 2019, through April 11, 2019, hauling debris caused by Hurricane Michael. K.C. Tree subcontracted with Crowder Golf to provide Emergency Disaster Relief to remove and clear damaged underbrush and trees in order to protect public health and to restore safe conditions in the area of hurricane destruction. The Contract between K.C. Tree and Crowder Golf provided K.C. Tree with compensation based upon the number of yards of debris hauled to the designated dump site.

During the thirteen (13) week period William Prince worked for K.C. Tree, he agreed in advance to compensation based upon hauling debris and refuse at the rate of $1.00 per yard.

The contract further provided that William Prince would be advanced income subject to withholding and FICA calculated at $475.00 per day payable weekly. The weekly income would be debited against the final calculation of earnings based upon the level of Mr. Prince's

Production.  The purpose of this arrangement was to create an incentive to work longer than standard hours by providing an opportunity to make a more lucrative income, and at the same time, to provide the emergency work necessitated by the catastrophic hurricane damage almost unprecedented in Florida's history.

Before starting the work for KC Tree, William Prince was offered a wage of $25.00 an hour plus overtime.  Mr. Prince and others rejected hourly pay, as well as receiving a weekly salary, and opted for the Day Rate Agreement for hauling debris at $1.00 per yard.  This pay arrangement is a standard of the industry in disaster relief, since recruiting workers is so competitive.  Each contract must be individually negotiated with the prospective worker.  The Day Rate incentive based upon production is the standard requirement in the industry.

William Prince was paid $475.00 a day pay advancement toward calculation of his final compensation payable at the end of the project.  Mr. Prince was paid $41, 065.00 for his work during a thirteen-week (13) period.  This advanced income is debited against the Day Rate calculation upon completion of the contract based on production.

The general contractor monitors the number of yards hauled by each of KC Tree's Workers.  Each load of debris is examined to determine the number of yards being hauled.

Jason Thompson was employed by KC Tree to oversee contract compliance.  Jason collected receipts provided by the monitors for each load hauled by the Day Rate Workers, such as William Prince.  These receipts were forwarded to the Home Office in Kansas City, Kansas, for processing and to issue weekly checks.  Such receipts also were retained in order to calculate compensation for KC Tree under the contract with Crowder Golf.

In this case, KC Tree contends William Prince approached Jason Thompson, suggesting that both he and KC Tree would benefit, if money was provided for him to pay one of the

monitors to determine the number of yards being higher than actually hauled.  Jason Thompson immediately rejected Mr. Prince's suggestion and advised it would be fraudulent and would violate Federal Law, since Federal Funds were involved.  Mr. Prince then absented himself for approximately three (3) days refusing to answer his phone or respond to communications .  Mr. Prince eventually showed up in a condition where he would be unable to safely operate his truck. The Owner of KC Tree, Zach Johnson, ordered William Prince to be discharged on sight. According to his contract with KC Tree, Mr. Prince waived his right to claim compensation at $1.00 per yard, but was allowed to keep all pay preciously advanced and paid weekly, including pay for several days where he did not show up for work.

**B.    ISSUE:**

The issues are whether William Prince meets the similarly situated standard for Conditional Certification, and whether other Day Rate Workers compensated based on production, with Day Rate Income advances, are similarly situated.  The factual complication is that Mr. Prince is claiming a breach of contract alleging he was denied his production-based pay, which relates to his implied claim of wrongful discharge.  The further complicating factor is that Mr. Prince is in effect contesting his discharge, since under his agreement with KC Tree, not working to contract completion waives his entitlement to the $1.00 per yard production-based pay calculation.

If the Court grants Conditional Certification,  then there is an issue whether other Day Rate Workers paid under contract on a non-production basis should be included in the Putative Class.  These workers agreed to individual contracts with KC Tree for daily rate compensation under terms authorized under 29 U.S.C. 207(g), which would exempt them from the Fair Labor Standards Act.

If the Court determines Conditional Certification should be granted in some form, there also is an issue concerning the content and language of the Notice and other documents related to the Opt-In Process. The Court should ensure such Notice does not create unnecessary litigation by notifying workers with no genuine complaints concerning their method of pay or the issue of overtime pay.

**C.      ARGUMENT AND AUTHORITY:**

While the Fair Labor Standard Act allows a Collective Action by one or more workers, for himself or others similarly situated, the Conditional Certification Process is subject to several factors. First, it is alleged William Prince was discharged for suggesting violation of a Federal Law by soliciting a plan to commit fraud against the Federal Government by using false calculations of debris hauled. As a result of his discharge, he failed to work until completion of the contract. It also is alleged Mr. Prince failed to show up for work. The question is whether determining workers "similarly situated" includes only those who also have engaged in alleged misconduct and have failed to work to contract completion. Defendant contends only discharged workers with overtime complaints should be considered as "similarly situated."

In *Thiessen vs. General Electric Capital Corporation*, 232 F. Supp. 2d 1230 (2002). Theissen filed a charge of discrimination with the Kansas Human Rights Commission and EEOC challenging what he described as a "White Blockers" Policy against older white employees. Theissen challenged the early retirement policies of General Electric, describing such policies as a pattern of practice motivated to discriminate by age and race against him and others similarly situated.

While the *Theissen* case reversed the District Court's decision to decertify the Opt-in Class, the Court still held while only substantial allegations were necessary to show that the

Putative Class members together were the victims of a single decision, policy, or plan. Assuming allegations of misconduct are true, was Mr. Princes rowing his own boat, since no other workers may be known to have been discharged for soliciting violation of Federal Law and Fraud.

Attorneys for the parties met and counseled in an effort to resolve the issue of Conditional Certification. The disagreement is that Plaintiff wants to include workers who were not involved or paid an advanced income based upon their production. The defenses available to the Defendant are individualized as to each Putative Class Member suggested by the Plaintiff. Plaintiff attempts to include Day Rate Workers, who individually contracted to be paid based on a Day Rate paid weekly, after rejecting being salaried or paid hourly with overtime, who arguably are not "similarly situated."

The decision to Conditionally Certify or decertify a Collective Action at the first phase under 29 U.S.C. 216(b) is a matter of the Court's discretion. *Theissen vs. General Electric, 232 Supp 1230 (2002).* The potential Opt-in Putative Class Members, suggested by the Plaintiff's, other than the one or two who worked with William Prince, hauling debris, did not have similar pay arrangements. The work performed over the forty (40) hour limit was individually agreed to in advance of working for KC Tree, as authorized by 29 U.S.C. 207(g). The decisions, policies, and plans to perform work for KC Tree is contended to be authorized under the Fair Labor Standard Act.

The purpose of the Fair Labor Standard Act is a remedial Statute, and is not one which encourages unnecessary litigation. Application of FLSA is intended to be fair when balancing the benefits for a worker and to reduce his cost to remedy a violation, and the necessity for multiple lawsuits. In our case, for the purpose of argument, workers currently complaining about

overtime pay includes Mr. Prince, his brother, his brother's girlfriend, and one other worker. Conditional Certification, in this case, is more likely to mislead and encourage satisfied workers who received the highest pay they ever received as Laborers, to join Mr. Prince's alleged motive to retaliate against KC Tree for his discharge. *See Hoffmann-Law Roche, Inc. vs. Sperling*, 493 U.S. 165, 170, 110 S. CT. 482, 107L. ed. 2d 480(1989).

The further purpose of a "Collective Action" is to allow Plaintiff's the advantage of lower individual cost to vindicate a violation of their workplace rights, by pooling resources. If the motive of William Prince is retribution more than his concern of being denied overtime, and it has been determined he has been paid more than the entire amount based on hauling debris at $1.00 per yard, his true purpose may arguably be unrelated to FLSA. The pay Mr. Prince received from KC Tree as a Laborer driving a truck to haul debris, would show that his pay exceeded what a Laborer would receive for an entire year.

Assuming KC Tree received no complaints concerning unpaid overtime pay, except from William Prince, are there any workers "similarly situated." The Fair Labor Standard Act allows a Plaintiff to vindicate violation of his non-exempt rights, and for other workers with similar complaints, by pooling resources and benefiting the Judicial System with only one proceeding. Will Conditionally Certifying a Class where there are no known complaints, as KC Tree contends, authorize a fishing expedition to draw in workers who are not "similarly situated." Conditional Certification in this could foster unnecessary and complex class action litigation, mainly for the purpose of satisfying Mr. Prince's motive for retribution. Mr. Prince and other workers have been fully and lawfully paid.

### D.    FORM AND CONTENT OF NOTICE

If Conditional Certification is Ordered by the Court, exhibit 1 of Plaintiff's Motion

proposes notice which is calculated to encourage Potential Class Members to consent to Opt-in, by misleading them under the Plaintiff's version of its content and form. The Defendant, KC Tree, is attaching as Exhibit 1, a Proposed Notice Form with Content which fairly and clearly outlines the purpose of the Order, and the decision to be made by the Worker. There also are modifications to the attachments related to the written consent by an Opt-in Class Member, included as part of Defendant's Exhibit 1. Defendant's editing eliminates any misleading terms and is intended to allow a fair and objective consideration by the worker.

### D. CONCLUSION:

There is a temptation to argue the merits that the workers were exempt from the FLSA, under 29 U.S.C. 207(g), and were not involved in Interstate Commerce. This Federal Statute allows individual contracts with workers before they commence working, and under which they receive extraordinary pay above their skill level, mainly as a direct result of the need for emergency disaster relief.

Workers actually determine the method of pay, even if their compensation is not calculated based upon production. KC Tree contends the workers refused offers of hourly pay with overtime in favor of a generous Day Rate pay greater than the competition, and far more than prevailing wage in Federal Emergency Projects.

While the Court follows a very lenient standard for Conditional Certification, this case is spear headed by a Plaintiff, who for purposes of argument was discharged for misconduct, and who is pursuing this case for purposes of retribution against KC Tree. Collective Actions, which are justified for Court efficiency and to reduce individual costs, are different from this case. This case has nothing to do with a credible claim for overtime pay. This is not a case where workers were paid less than minimum wage, or who are expected to appeal for relief under the Fair Labor

Standard Act,  This is a case where short time workers were paid enormous amounts of money for emergency work requiring more than normal hours, as a result of the catastrophic damages caused by Hurricane Michael, or other damaging weather events.

If the Court Conditionally Certifies a Putative Class to be notified, KC Tree urges the Court narrow the scope of the Conditional Class to include only those paid on a production basis, such as William Prince.  KC Tree contends it did not make a single decision, policy, or plan, and paid under contracts favorable to the worker, providing pay advancements based on Day Rates and incentives based on production.  While such compensation is an industry standard in disaster relief,  each and every worker was offered an hourly income with overtime, a large weekly salary, or a Day Rate with higher benefits by an authorized contract, under FLSA.  KC Tree's pay agreements were therefore lawful and exempt from the FSLA.

*Respectively Submitted,*

*/s/ John Ivan*
John Ivan,  KS-000394
Kansas U.S. District Bar# 06340
U.S. Bank Building, Suite 308
8600 Shawnee Mission Parkway
Shawnee Mission, Kansas  66202
(913) 384-0370(Tel.)//(913) 384-0374 (Fax.)
Email:  johnivanlaw@yahoo.com
**ATTORNEY FOR DEFENDANT**

## CERTIFCATE OF SERVICE

I hereby certify that a duplicate copy of the above and foregoing Defendant's Response in Opposition to Plaintiff's Motion for Conditional Certificate and The Proposed Form of Notice to Putative Class Members, was electronically filed via the United States District Court for the District of Kansas, on this 7th day of May, 2020, and or emailed and faxed, to the following:

David I. Moulton
**Bruckner, Birch, PLLC.**
8 Greenway Plaza, Suite 1500
Houston, TX  77046
(713) 877-8065(Tel.)
Email: dmoulton@brucknerburch.com
and

Eric L. Dirks
**WILLIAMS DIRKS DAMERON LLC.**
11 Main Street, Suite 2600
Kansas City, Missouri 64105
(816)945-7165
www.williamsdirks.com

and

Richard J. (Rex) Burch Texas Bar No. 24001807 (pro hac vice)
**BRUCKNER BURCH,PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas  77046
(713)877-8788(Tel.)
(713)877-8065(Fax.)r
Email: rburch@brucknerburch.com

and

Andrew W. Dunlap Texas Bar No. 24078444 (pro hac vice)
Richard M. Schreiber Texas Bar No. 24056278 (pro hac vice)
**JOSEPHSON DUNLAP,LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713)352-1100(Tel.)
Email: adunlap@mybackwages.com
Email: rschreiber@mybackwages.com
Attorneys for Plaintiffs

*Respectfully submitted,*

*/s/ John Ivan*
John Ivan, KS #06340
8600 Shawnee Mission Parkway, Suite 308
Shawnee Mission, KS  66202
(913) 384-0370 (Tel.)//(913) 384-0374 (Fax.)
Email: johnivanlaw@yahoo.com
**ATTORNEY FOR DEFENDANT**

# EXHIBIT 1

**THIS IS A COURT-AUTHORIZED NOTICE**
**\*\*\*THIS IS NOT AN ADVERTISEMENT FROM A LAWYER\*\*\***

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| WILLIAM PRINCE, Individually and for Others Similarly Situated,<br><br>v.<br><br>KANSAS CITY TREE CARE, LLC | **Case No. 19-cv-2653-KHV-JPO** |

**NOTICE OF UNPAID OVERTIME LAWSUIT**

TO:   Workers similarly situated to the Claimant, William Prince, who received income on a daily rate basis toward a final income calculation based on hauling debris at $1.00 per yard.

RE:   Collective Class Action lawsuit seeking unpaid overtime, back wages, and other damages.

**DEADLINE TO RETURN CONSENT FORM: <<60 days from mailing>>**

**1.    Why Are You Getting This Notice?**

A Collective Class Action lawsuit was filed on behalf of William Prince, and similarly situated workers performing sercices for or on behalf of Kansas City Tree Care, LLC., who received income calculated on a Day Rate paid weekly pending a final calculation of final compensation based on hauling debris for $1.00 per yard, with no overtime compensation . The Law Suit alleges Kansas City Tree Care, LLC. violated the Fair Labor Standard Act (FLSA). The case is styled *Prince v. Kansas City Tree Care, LLC*, No. 19-cv-2653-KHV-JPO, in the Federal Court (D. Kan). The Court conditionally identified you as a potential class member.

The Court has not made any decisions about this case, or determined whether any worker is entitled to receive overtime pay. The Court authorized this Conditional Notice to advise you of how your rights under the FLSA could be affected by this lawsuit, and to describe how to participate in this collective action. By returning a Consent to Join Lawsuit Form, you can join this lawsuit, and try to recover damages under Federal Law for unpaid overtime for up to 3 years, prior, if the Court certifies and authorizes a Class Action.

**2.    What Is This Lawsuit About?**

William Prince alleges that he was paid a flat daily rate regardless of the number of hours he worked, including those over 40 in a workweek, by KC Tree Care. He filed this collective action lawsuit alleging that KC Tree Care violated the FLSA by not paying overtime compensation for hours worked over 40 hours in a single workweek. FLSA, 29 U.S.C. § 201, *et seq.*

1

Prince contends KC Tree Care misclassified him and other workers similarly situated who were receiving daily income advances towards a final determination of income based upon hauling debris calculated at $1.00 per yard, or agreed in advance to be paid a Flat Daily Rate due to the emergency caused by the Hurricane.  Mr. Price claims the payment plan was for the purpose of avoiding overtime requirements of FLSA.  Prince alleges KC Tree Care owes workers similarly situated to him back wages in the form of unpaid overtime, additional liquidated damages equal to the amount of unpaid overtime, Attorney's Fees and Costs.

KC Tree Care claims that the Claimant, William Prince, and workers similarly situated, were exempt from the FLSA based on an individual contract to be paid a Daily Rate or on a Piece basis for hauling Hurricane debris, and also were exempt workers not working in Interstate Commerce.

The Court has not ruled which party will prevail in this lawsuit, but has ordered this notice be sent to potential members of a class claiming overtime pay and to inform you of your legal rights to join the Class Action Lawsuit, if approved by the Court.

| 3. | What Are Your Options? |
|----|------------------------|

If you want to join this lawsuit for unpaid overtime wages, you may read, sign, and return the attached Consent to Join Lawsuit Form by **«60 days from date of mailing»**. You may return your Consent to Join Lawsuit Form by filling out the attached form and returning it by mail, email, or fax to:

**Overtime Lawsuit Against KC Tree Care**
**BRUCKNER BURCH PLLC**
**8 Greenway Plaza, Suite 1500**
**Houston, Texas 77046**
**Telephone: 713-877-8788 · Fax: (713) 877-8065**
**E-mail: consents@brucknerburch.com**

You may also consult with an attorney of your choice. You should **not** contact the Court regarding this matter.

| 4. | Effect Of Making A Claim For Unpaid Overtime Wages. |
|----|------------------------------------------------------|

If you return a Consent to Join the Lawsuit form, you will become part of a class of workers similarly situated to William Prince, who are also authorized to join the lawsuit.  If this case is not successful, you will receive nothing and you will not be responsible for any of the case cost, expenses, or Attorney's Fees.

If you do not wish to be a part of this collective action lawsuit, you do not need to do anything. The decision to join is entirely yours.

2

## 5.    Retaliation and Blackballing Is Prohibited

This Court and Federal law prohibits anyone from firing or discriminating against you because you decide to join, or not join, this case. These laws forbid KC Tree Care or their associated companies, subcontractors, or clients from retaliating against you for participating in this lawsuit.

If you suspect any retaliation from KC Tree Care for participating in this lawsuit, please immediately call the attorneys listed below.

## 6.    Your Legal Representation If You Join.

If you choose to join this collective action lawsuit, your attorneys will be David Moulton and Rex Burch of the law firm BRUCKNER BURCH PLLC and Andrew W. Dunlap and Rick Schreiber of the law firm JOSEPHSON DUNLAP, LLP. Their contact information is listed below.

## 7.    How Can You Receive More Information?

If you have any questions about this lawsuit or your legal rights, you should contact counsel for the day rate workers:

<table>
<tr><td>Richard J. ("Rex") Burch</td><td>Andrew W. Dunlap</td></tr>
<tr><td>David I. Moulton</td><td>Richard M. Schreiber</td></tr>
<tr><td><strong>BRUCKNER BURCH PLLC</strong></td><td><strong>JOSEPHSON DUNLAP, LLP</strong></td></tr>
<tr><td>8 Greenway Plaza, Ste. 1500</td><td>11 Greenway Plaza, Suite 3050</td></tr>
<tr><td>Houston, Texas 77046</td><td>Houston, Texas 77046</td></tr>
<tr><td>Phone: 713.877.8788</td><td>Telephone: 713-352-1100</td></tr>
<tr><td>Fax: 713.877.8065</td><td>Fax: (713) 352-3300</td></tr>
<tr><td>Email: consents@brucknerburch.com</td><td>E-mail: info@mybackwages.com</td></tr>
</table>

## 8.    You Have Sixty (60) Days to Join this Lawsuit.

Your determination of whether or not to take action should be made promptly. Because the law only allows a person to recover up to three (3) years of back wages from the date the Consent to Join Lawsuit Form is filed, time could be of the essence in submitting this form, since the claim for backwages is limited to no more than three (3) years or less.  All consent forms must be received no later than **«60 days from date of mailing»**, which is sixty (60) days after this Notice was mailed to you. A Consent to Join Lawsuit Form is enclosed with a self-addressed stamped envelope.

**CONSENT TO JOIN LAWSUIT AGAINST KANSAS CITY TREE CARE, LLC**

Printed Name: _____

1. I hereby consent join the Collective Class Action lawsuit filed against KC Tree Care to pursue my claims of unpaid overtime during the time that I worked KC Tree Care, if approved by the Court.

2. I understand that this lawsuit is brought under the Fair Labor Standard Act, and I consent to be bound by any Court decision.

3. I designate the law firms and attorneys at BRUCKNER BURCH PLLC and JOSEPHSON DUNLAP, LLP and, as my attorneys ("Counsel") to prosecute my wage claim.

4. I consent to having Plaintiff William Prince and Counsel make all decisions regarding the litigation, the method and manner of conducting this litigation, the terms of any potential settlement of this litigation, releasing of claims, entering into an agreement with Counsel regarding attorneys' fees and costs, and all other matters pertaining to the Lawsuit.

Signature: _____     Date Signed: _____

**Please print or type the following information, which will be kept confidential:**

_____          _____
Address                                                City/State/Zip

_____          _____
Home Telephone Number                          Cell Phone Number

_____          _____
E-mail Address                                        Estimated Dates of Employment

_____          _____
Position(s) Held                                       Location(s) Worked

<u>**RETURN THIS FORM BY MAIL, EMAIL, OR FAX TO:**</u>
<u>**Overtime Lawsuit Against KC Tree Care**</u>
**BRUCKNER BURCH PLLC**
**8 Greenway Plaza, Suite 1500**
**Houston, Texas 77046**
**Telephone: 713-352-1100 · Fax: (713) 352-3300 · E-mail: consents@brucknerburch.com**

4

**E-MAIL/TEXT MESSAGE TO POTENTIAL CLASS MEMBERS**

---

**Subject:**     **Notice of unpaid overtime Collective Class Action lawsuit against KC Tree Care**

Dear KC Tree Care Day Rate Worker:

Attached is the Court-authorized Notice regarding a Collective Class Action lawsuit against KC Tree Care alleging you were not paid overtime compensation as required by a federal law known as the Fair Labor Stadnards Act (FLSA). You are receiving this message because the Court has ruled you may be eligible to participate in this Collective Class Action lawsuit seeking to recover unpaid overtime wages and your rights may be affected by its outcome. The attached Notice explains the steps you need to take if you want to join. You can review and sign the forms to join the case here «hyperlink».

If you have any questions, please feel free to contact me at «phone» or by e-mail at «email».

«Signature Block»

---

5

## PROPOSED TELEPHONE SCRIPTS FOR UNDELIVERABLE MAIL

## LIVE CALLS

Hello, my name is _____ and I work for _____. I am calling to confirm that you received the notice in the mail regarding the unpaid overtime lawsuit against KC Tree on behalf of its workers paid a day rate with no overtime. We received information indicating that the notice packet regarding your potential claims affected by the lawsuit against KC Tree Care that we mailed was returned as undeliverable. Have you received this notice by mail and/or e-mail?

**If yes:** Thank you, have a good day.

**If no:** What is the best method for me to send you the notice? (mail/e-mail/fax). This information will only be used to send you a copy of the notice. Thank you, have a good day.

**If potential class member asks what the case is about:** I cannot discuss the case with you. The notice that will be sent to you will provide information regarding the case. If you have additional questions, the notice explains your options for obtaining additional information.

## MESSAGES (VOICEMAIL OR OTHER)

Hello. This message is for «Name of Potential Class Member». My name is _____ and I work for _____. I am calling to confirm that you received the notice in the mail regarding the unpaid overtime lawsuit against KC Tree Care on behalf of its workers paid a daily income toward compensation based on $1.00 per yard for hauling Hurricane debris. We received information indicating that the notice packet regarding your potential claims affected by the lawsuit against KC Tree Care that we mailed was returned as undeliverable. If you have not received the notice, please call _____ between the hours of _____ to provide the representative with your current contact information so that a notice can be sent to you. Any information you provide will only be used to send you the notice. Thank you and have a good day.

6

# **<u>EXHIBIT 2</u>**

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

WILLIAM PRINCE, Individually and for
Others Similarly Situated,

v.                                                  Case No. 19-CV-2653-KHV-JPO

KANSAS CITY TREE CARE, LLC

## AFFIDAVIT OF ZACHARY R. JOHNSON

I, Zachary R. Johnson, of lawful age, being first duly sworn, certify that the following statements are true:

1.      I am the Sole Member of Kansas City Tree Care, LLC.  I serve as the Chief Operating Officer and Manager of the Companies Operations.  Our Companies principal operations are on the Kansas side of Kansas City Metropolitan Area.  The company provides tree services carried out by local employees.

2.      Kansas City Tree Care, LLC., also periodically contracts to perform Disaster relief work in area's hit by Catastrophic Hurricanes on an emergency and short time basis.  The nature of our company's work is to clear and remove damaged under brush and trees in order to protect public health and to restore safe conditions in the immediate area of destruction.   Kansas City Tree is paid under its subcontract with a general contractor compensated from Federal, State, and local funds.

3.      There are multiple contractors at the emergency disaster sites.  The competition to retain worker's, is serious.  Worker's are usually experienced Laborers, and a few have CDL's to operate trucks to haul debris.  There are very few skilled Laborers.

1

4.      The standard practice by the contractor's at disaster sites, is to negotiate a high daily rate of pay  in order to retain workers.  KC Tree always offers a prospective worker $25.00 an hour salary with overtime, a high weekly salary, or a daily rate which often is at least double any prevailing wage for Federal Contract Work.  The contact arrangements are negotiated before the worker begins working.  Emergency work requires irregular hours in excess of forty hours, based on emergency requirements for contract obligations of KC Tree.

5.      The workers who are authorized to drive trucks, with CDL's, are made the same offer to work at $25.00 per hour plus overtime, a high weekly salary, or income determined by production incentives calculated at $1.00 per yard for hauling debris to the designated dump site. This agreement requires advancement of income, withholding of taxes and FICA to ensure IRS compliance, and advancing income based on a Day Rate paid weekly debited toward final compensation calculated at $1.00 per yard debris hauled by the worker.

6.      William Prince turned down an offer to be paid hourly with overtime, or a high weekly salary, and he eventually opted for the production incentive approach calculating his finale compensation at the end of the project based on hauling debris for $1.00 per yard. William Prince also expressed that he would turn down the job if he was not paid a  gross of $475.00 a day, as an advancement toward final compensation.  William Prince also agreed that the incentive payment be conditioned upon working until KC Tree completed its contract obligation.

7.      In April, 2019, Jason Thompson, who was employed by KC Tree to oversee contract compliance, and to retrieve and report information from the daily monitoring receipts keeping track of how much debris was being hauled by each worker.  Jason Thompson provided

the name of each worker on a daily basis to the Office of KC Tree, so that the information was available to issue weekly checks for the worker.

On approximately April 8, 2019, Jason Thompson, reported problematic and dangerous news about William Prince. Jason reported that William Prince requested Jason to provide under the table monies to grease the palm of a monitor for the purposes of calculating falsely high number of yards being hauled, rather than what was actually being hauled. William Prince represented this would be beneficial to KC Tree and to him. Jason Thompson immediately denied Mr. Prince's request and advised him that any action of this type would be a violation of Federal Law and that the Company would not be part of any fraudulent scheme. When this was reported to me, I immediately asked Jason to discharge Mr. Prince from the company. William Prince separated himself from work for approximately three (3) days, and upon his return in a questionable condition, he was immediately discharged.

8.    William Prince has since complained that he was owed approximately $15,000.00, under his contract, since he considers his income entitlement should be based on net income under the production incentive rather than gross. William Prince was paid even when he did not haul debris. Mr. Prince was paid $41,065.00 for less than thirteen (13) weeks of work. The initial contract provided the income advancements he received would be his total pay if he did not complete work through the end of KC Tree's contract. Otherwise, the production incentive of $1.00 per yard would be considered waived. In any event, the gross income received by Mr. Prince approximates what his final compensation would have been based on the criterion of $1.00 per yard.

**AFFIANT FURTHER SAITH NAUGHT.**

Zachary R. Johnson

3

Subscribed and sworn to before me on this 7<u>Th</u> day of May , 2020.

_____
Notary Public

Jennifer L Tribble
NOTARY PUBLIC
STATE OF KANSAS
My Appointment Expires

My commission expires: 10|10/2020

4

# EXHIBIT 3

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

WILLIAM PRINCE, Individually and for
Others Similarly Situated,

                         Case No. 19-CV-2653-KHV-JPO

v.

KANSAS CITY TREE CARE, LLC

**AFFIDAVIT OF JASON THOMPSON**

I, Jason Thompson, of lawful age, being first duly sworn, certify that the following statements are true:

1.      I am an employee of Kansas City Tree Care, LLC., and I also have my own company, KC Hauling, Inc.  I have performed both subcontractor and employment services for KC Tree.

2.      Following the massive Hurricane Michael which caused the most extreme damages in the history of the United States, I was asked by Kansas City Tree Care, LLC., to oversee its contract with Crowder Golf to perform emergency disaster clean up services for the purpose of restoring public health and safety.

3.      My duties were to ensure that there were workers arranged under individual contracts to provide groundwork, flagging, and most importantly, the hauling of debris to a designated dump site, based on an incentive and production basis.  Competition is so great, and the worker supply so often limited, that generous creative payment contracts have to be individually negotiated with potential workers.  Workers are always offered an hourly wage of at least $25.00 an hour plus overtime, a generous weekly salary, or a Day Rate Pay far in excess

1

of their normal wage, including overtime.  This Day Rate Pay arrangement is the standard of the industry at Hurricane Sites.  Worker's hauling debris to dump sites nearly always opt for an incentive payment plan, especially if income is advanced for living expenses during the duration of the contract.

On or about April 8, 2019, one of the Boom Truck Operators, William Prince, who already had been of some concern because of work irregularity, came to me requesting front money to grease the palm of one of the monitors, so the monitor would calculate the number of yards hauled by him higher than the debris actually hauled.  William Prince argued this would be helpful to the Company, since the company is paid upon the number of yards hauled, as well as himself personally.  I was shocked and immediately denied and repudiated his request and admonished him that his proposal would constitute a violation of Federal Law and fraud.  I immediately reported Mr. Prince's conversation and request to Zachary Johnson, the Company's Sole Owner, Zack Johnson immediately Ordered that I discharge Mr. Prince in the Company's behalf.  Mr. Prince, before being discharged, disappeared for approximately three (3) days, and upon his return in a state which I would describe as impaired, I advised him that he was discharged from working for KC Tree.  Despite his discharge, it is my understanding the company paid him for the days that he missed,  and closed the books, since he was considered to have waived pay based on hauling debris for $1.00 per yard.

**AFFIANT FURTHER SAITH NAUGHT.**

**Jason Thompson**

Subscribed and sworn to before me on this 7th day of May , 2020.

Jennifer L Tribble
NOTARY PUBLIC
STATE OF KANSAS
My Appointment Expires

STATE NOTARY PUBLIC
KANSAS

Notary Public

My commission expires: 10/10/20

3